IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAMELA JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-1345-N |
| | § | |
| METHODIST HOSPITALS OF | § | |
| DALLAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>AMENDED ORDER</u>

Before the Court is Defendant Methodist Hospitals of Dallas's ("Methodist") motion to rule on outstanding matters [93]. The Court treats that as a motion to reconsider its Order of October 16, 2006 ("the October 16 Order"). The Court vacates its October 16 Order and substitutes this amended order in its place.

Before the Court are Plaintiff Pamela Jackson's Motion for Partial Summary Judgment [50] and Defendant Methodist Hospital's ("Methodist") Motion for Summary Judgment [58]. For the reasons set forth below, the Court denies Jackson's motion for partial summary judgment. The Court grants in part and denies in part Methodist's motion for summary judgment. Also before the Court is Plaintiff Jackson's motion for declaratory judgment [63]. Jackson seeks a declaration that Methodist Hospitals of Dallas violated Sections 406(b)(1) and (b)(2) of the Employee Retirement Income Security Act ("ERISA") by offering incentives for participants and beneficiaries to use Methodist facilities, and, for certain services, specified hospitals. Because Jackson failed to allege section 406(b)(1) and

(b)(2) claims in her Fifth Amended Complaint, the Court denies Jackson's motion for declaratory judgment as improper.

## I. JACKSON'S TREATMENT AND TERMINATION

This action arises out of a sequence of events that culminated in Plaintiff Pamela Jackson's firing from Defendant Methodist Hospitals of Dallas's wholly owned subsidiary, Prime Financial ("Methodist"). On or about September 16, 2002, Jackson began her employment with Methodist and became a participant and beneficiary in Methodist's employee health insurance plan ("Plan"). On June 5, 2003, Jackson went for treatment to Methodist's facility at North Beckley Avenue in Dallas, Texas. Jackson claims she notified the admitting personnel that she was an employee of Methodist and was covered under Methodist's Plan. Methodist treated Jackson and released her that same day.

On September 10, 2003, while at work, Jackson's coworker, Defendant Sonya Jordan ("Jordan"), presented to Jackson a UB-92 form related to Jackson's June 5th visit to Methodist's facility. The UB-92 form is a code based claims form, reflecting medical services. Uncomfortable with having her information processed by a coworker, Jackson immediately complained to her supervisor. Jackson claims that, despite signing a privacy waiver in connection with her treatment, she did not consent to waiving her privacy interest in the workplace. Furthermore, Jackson claims the form was improperly routed to Methodist. Because Jackson's treatment was wholly reimbursable under the Plan, Jackson claims the form should have been sent to Icon's North Texas Networks claims facility for processing

and payment, instead of to Methodist for collection on the claim. Notwithstanding her complaint, Jackson reported for work the remainder of the week.

That weekend, on Sunday, September 14, 2003, Jackson went to Doctor's Hospital, complaining of anxiety and depression, which Jackson attributed to the incident in which Jordan presented to Jackson the UB-92 form. The attending physician referred Jackson to Timberlawn Mental Health Facility, and on Monday, September 15, 2006, Jackson entered Timberlawn for observation and treatment. Consequently, Jackson missed work Monday, September 15 through Wednesday, September 17. Methodist claims Jackson violated the attendance and punctuality policy by "no showing," but Jackson claims she informed Methodist that she would not report. Jackson claims that on Monday, September 15th, her mother phoned Methodist and that on Tuesday, September 16, 2003, Timberlawn sent communication to Methodist via facsimile, informing Methodist that Jackson had been admitted for observation and treatment.

Jackson presents the remaining time line as follows: Jackson claims an agent of Methodist sent her an application for Family and Medical Leave to Timberlawn on September 17 for her to complete. Jackson completed the form and returned it to Methodist on September 22, 2003. On September 25, 2003, Jackson received acknowledgment and confirmation of receipt of the form and was notified that she had been approved for leave, beginning, retroactively, on September 17, 2003. On October 20, 2003, Jackson claims she received a letter notifying her that she had been terminated, effective September 12, 2003 – the last day she reported for work. She further claims she received notification on November

AMENDED ORDER – PAGE 3

3, 2003 that she was eligible for continuing coverage under the Plan, following the "qualifying event" (i.e., termination)[1] that occurred October 15, 2003. Methodist concedes that the notification violated the forty four day notification requirement under the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

While Jackson's account appears straightforward, the factual picture becomes muddled in the interstices. For example, Methodist does not deny receiving a phone call from Jackson's mother, but does assert that Jackson failed to notify her supervisor of her absence, as required under the attendance and punctuality policy. Additionally, documents from as early as September 18, 2003 reference Jackson's termination, following her failure to appear at work. Methodist claims such action is clearly within its attendance and punctuality policy, of which Jackson was aware. Methodist also claims that numerous tardies contributed to Jackson's termination. Finally, Methodist attributes Jackson's Family and Medical Leave approval, effective September 17, 2003, to miscommunication between two offices. Methodist claims the decision to terminate Jackson arose prior to learning that Jackson had requested FMLA leave. While Tim Meeks and Gail Ring – both Jackson's superiors at Methodist – were contemplating Jackson's continued employment in one Methodist office, Jackson's claim for FMLA leave was processed in another office, and neither office knew of the circumstances in the other. In other words, Methodist claims

---

[1]It is unclear on the facts presented whether "qualifying event" means actual termination, so that termination became effective October 15, 2003, or whether it simply means that the letter notifying Jackson of her termination was mailed on that date.

AMENDED ORDER – PAGE 4

Jackson's FMLA application was processed without any knowledge of the facts that Methodist claims led to Jackson's termination.

In short, the facts surrounding this case are at least unclear. Nevertheless, both parties move for summary judgment. Jackson seeks partial summary judgment on her Family & Medical Leave Act ("FMLA") claim and Consolidated Omnibus Budget Reconciliation Act ("COBRA") claim. Methodist seeks summary judgment on all state and federal claims asserted by Jackson. The Court addresses each claim below.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that a party moving for summary judgment has the burden of showing that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Harbor Ins. Co. v. Trammel Crow Co.*, 854 F.2d 94, 98 (5th Cir. 1988). The Court is to accept the nonmovant's evidence and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. The Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. FACT ISSUES PRECLUDE SUMMARY JUDGMENT ON JACKSON'S FMLA CLAIM

The Family Medical Leave Act ("FMLA") allows eligible employees working for covered employers to take reasonable, temporary leave "for medical reasons, for the birth or

adoption of a child, and for the care of a spouse, child, or parent who has a serious health condition," without the risk of losing employment. 29 U.S.C. § 2601(b)(2). The Act applies to covered employers with fifty or more employees. *See id*. § 2611(4)(A). Employees who have worked for a covered employer for at least 12 months and "for at least 1,250 hours . . . during the previous 12-month period" are eligible for FMLA leave. *See id.* § 2611(2)(A). The FMLA makes unlawful *any* interference with, restraint on, or denial of the rights it provides.

The Court denies both parties' motion for summary judgment because the length of Jackson's employment and reason for her termination – both material issues – remain in dispute. First, the parties disagree on the date of Jackson's termination. If, as Methodist asserts, it backdated Jackson's termination for a legitimate reason, thereby establishing September 12, 2003 as the effective termination date, then Jackson fails to qualify for leave under section 2611(2), and her claim is moot.[2] However, if, as indicated in the November 3rd letter, the "qualifying event" (i.e., termination) occurred October 15, 2003,[3] then Jackson qualifies for protection under section 2611(2) and Methodist's claim fails.

---

[2]On the other hand, a reasonable juror could infer that Methodist backdated the effective date of termination for an illegitimate reason, in which case the effective date of termination remains in dispute and Methodist's motion fails. *See Christie v. Iopa*, 176 F.3d 1231, 1240 (9th Cir.1999) ("Although Kimura's actions may have an innocent explanation, on summary judgment the only question is whether a rational juror could infer a noninnocent explanation.")

[3]*See supra* note 1.

Notwithstanding the November 3rd letter, Methodist's motion fails if Jackson remained on the payroll for any part of the week beginning September 15, 2003. "If an employee is maintained on the payroll for any part of a week, . . . the week counts as a week of employment." 29 C.F.R. § 825.110(b). Because adding the week of September 15 - September 19 to Jackson's term of employment would have satisfied the twelve month requirement,[4] and because the issue is a factual one that remains in dispute,[5] both parties' motion for summary judgment fails.

Additionally, both parties' motion fails because the reason for Jackson's termination remains in dispute. To establish a prima facie case under FMLA, a plaintiff must prove (1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal connection between the protected activity and the discharge. *Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319-20 (5th Cir. 1999). Methodist claims Jackson cannot establish the requisite causal connection because the "wheels of termination were put into motion before her request for leave." Def.'s Br. at 18 (quoting *Tuberville v. Personal Finance Corp.*, 1996 WL 407571, 1996 U.S. Dist. LEXIS 16755 (M.D. Miss. 1996)). Methodist claims it fired Jackson in accordance with its attendance and punctuality policy, before learning of Jackson's request for FMLA leave. Jackson, on the other hand, claims she did not violate the attendance and punctuality policy and that Methodist's justification is merely pretext for

---

[4]According to both parties, Jackson's employment commenced sometime between September 16 and September 18, 2002.

[5]Neither party addresses this issue in their briefs, thus leaving the issue in dispute.

AMENDED ORDER – PAGE 7

its unlawful firing.  Suffice it to say, facts surrounding Jackson's termination clearly remain in dispute.  Because genuine issues of material fact remain in dispute, the Court denies both parties' motions for summary judgment.

### IV. JACKSON CANNOT SHOW DAMAGES ON HER COBRA CLAIM

COBRA allows an employer forty four days to notify an employee of eligibility for COBRA benefits following a "qualifying event."  29 U.S.C. § 1166.  A "qualifying event" includes, among other things, "[t]he termination . . . of the covered employee's termination." *Id.* at § 1163(2).  Methodist concedes its firing of Jackson constitutes a qualifying event and that its notification exceeded the statute's forty four day limit.  However, Methodist claims Jackson's COBRA claim should be denied because Jackson fails to produce evidence of harm and, thus, does not warrant the statute's discretionary relief.  *See* 29 U.S.C § 1132(c)(1) (stating that an employer who fails to adequately notify an employee "may in the court's discretion be personally liable to such participant or beneficiary").  Because Methodist afforded Jackson 60 days to elect to continue COBRA coverage and because Jackson failed to produce any evidence that she was harmed or prejudiced by receiving a late notification, Jackson cannot show any harm from Methodist's technical violation.  Accordingly, the Court denies Jackson's motion, and grants Methodist's motion for summary judgment on Jackson's COBRA claim.

### V. JACKSON FAILS TO DESIGNATE EVIDENCE IN SUPPORT OF HER ERISA SECTION 404(A) AND 406(A)(1)(C) CLAIMS

To survive summary judgment, nonmovants must "establish that there is a genuine issue of material fact . . . ."  *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574

(1986); *see also Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996) ("Rule 56 saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition."). If the nonmovant fails to discharge his burden of designating specific fact issues, summary judgment must be entered against him.

The Court grants summary judgment on Jackson's section 404(a) and 406(a)(1)(c) claims because Jackson failed to designate any evidence creating a genuine issue of material fact on these claims. In fact, Jackson failed to address these claims at all. Instead, Jackson's response to Methodist's motion for summary judgment referred the Court to Jackson's motion for declaratory judgment regarding sections 406(b)(1) and (b)(2). Furthermore, Jackson failed to address these claims in her motion for partial summary judgment. Thus, Jackson appears to have abandoned her section 404(a) and 406(a)(1)(c) claims altogether, choosing instead to hang her hat on sections 406(b)(1) and (b)(2). Accordingly, the Court grants Methodist's motion for summary judgment on Jackson's ERISA section 404(a) and 406(a)(1)(c) claims.

## VI. JACKSON FAILED TO ALLEGE VIOLATIONS OF ERISA SECTIONS 406(B)(1) AND (B)(2)

On June 27, 2006, Jackson filed a motion for declaratory judgment, in which she sought declaration that Methodist violated ERISA sections 406(b)(1) and (b)(2). Jackson failed to allege these claims in her Fifth Amended Complaint. Section 406(b)(1) prohibits fiduciaries from dealing with the assets of the plan in their own interests, while section

406(b)(2) prohibits a fiduciary from dealing with the plan altogether when his or her interests are adverse to the plan or its participants and beneficiaries. Jackson claimed Methodist violated ERISA by offering incentives for participants and beneficiaries to use Methodist facilities, and, for certain services, specified hospitals. Methodist subsequently moved this Court to strike Jackson's motion on the grounds that (1) Jackson has not met the requirements of Federal Rule of Civil Procedure 57 and (2) Jackson's motion is not properly before this Court because she has not pled a violation of ERISA Sections 406(b)(1) and (b)(2).

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Such "declaratory judgments" are "ordinary civil action[s]." 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2768 (1983) ("The incidents of pleading, process, discovery, trial, and judgment are the same."). Declaratory judgment actions must be brought in accordance with the Federal Rules of Civil Procedure. FED. R. CIV. P. 57 ("The procedure for obtaining a declaratory judgment pursuant to Title 28 U.S.C. § 2201, shall be in accordance with these rules . . . ."); *see also Int'l Bhd. of Teamsters v. Eastern Conf. of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995) ("[B]y specifically referencing the Federal Rules, Rule 57 contemplates that an action for a declaratory judgment is a civil action subject to the Federal Rules."). In other words, a party "may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for

a declaratory judgment." *Int'l Bhd. of Teamsters*, 160 F.R.D. at 456. Because Jackson failed to allege section 406(b)(1) and (b)(2) claims in her Fifth Amended Complaint, the Court denies Jackson's motion for declaratory judgment as improper.

## VII. OTHER CLAIMS

Methodist moves for summary judgment on Jackson's negligent invasion of privacy claim, Texas Labor Code claim, and breach of contract claim. The Court previously dismissed Jackson's negligent invasion of privacy claim, by Order dated July 19, 2006. Jackson withdrew her Texas Labor Code and breach of contract claims in her response to Methodist's motion for summary judgment. Accordingly, the Court dismisses those claims.

Finally, Methodist seeks summary judgment on Jackson's claims for intentional invasion of privacy, negligence per se and negligent supervision, and discrimination in violation of ERISA section 1140. The record reflects fact issues precluding summary judgment. Accordingly, the Court denies Methodist's motion for summary judgment as to these other claims.

Signed November 1, 2006.

David C. Godbey
United States District Judge

AMENDED ORDER – PAGE 11